1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,              CASE NO. 97cr2520-LAB

12                          Plaintiff,      **ORDER GRANTING GOVERNMENT'S RULE 35(b)(2) MOTION TO REDUCE**
         vs.
13                                          **DEFENDANT'S SENTENCE AND REJECTING DEFENDANT'S**
14   GILBERTO HIGUERA-GUERRERO (7),         **SUGGESTION FOR GREATER SENTENCE REDUCTION**
15                          Defendant.

16

17

18                        **Background**

19        In 2007, this Court sentenced Gilberto Higuera-Guerrero ("Mr. Higuera") to prison for

20   30 years after he pled guilty to Racketeering and to Committing a Violent Act in Aid of a

21   Racketeering Enterprise. Between approximately 1992 and 2002, Mr. Higuera served as a

22   second-level lieutenant in the Arellano-Felix drug cartel ("AFO") working directly under his

23   brother, Ismael Higuera-Guerrero. During that time, the AFO operated along the border

24   between Tijuana and San Diego, and was "one of the biggest and most violent criminal

25   groups in Mexico." Tim Steller, *Mexican Drug Runners May Have Used C-130 from Arizona*,

26   Arizona Daily Star, April 15, 1998.The cartel engaged in drug smuggling, extortion,

27   kidnapping, public corruption, and murder. Mr. Higuera's job was to help coordinate the

28   receipt of large cocaine shipments from Colombia that were destined for importation into the

1   United States. In connection with this task, he bribed public officials and assisted in the

2   collection of AFO drug trafficking proceeds, netting the cartel tens of millions of dollars. Mr.

3   Higuera's other duties for the AFO were more violent. As an example, he personally

4   participated in the kidnapping and murder of a suspected informer named Cesar Gustavo

5   Cruz-Prado. He also commissioned or participated in the murders of other victims. Mr.

6   Higuera, a Mexican national, was arrested by Mexican police in 2004 and was extradited to

7   the United States in January 2007.

8          Prosecutors have filed a motion under Rule 35(b)(2) asking the Court to reduce Mr.

9   Higuera's sentence from 30 years to 20 years based on his post-sentence substantial

10   assistance to the government. The motion itself was filed publicly, but the prosecutor's

11   declaration setting forth the reasons for the requested sentence reduction was sealed to

12   avoid compromising sensitive information and endangering lives. Consistent with the First

13   Amendment, the public has a qualified right to know that the government has asked for a

14   reduction of Mr. Higuera's sentence, but not the specific reasons supporting the request. *See*

15   *CBS, Inc. v. U.S. Dist. Court for the Cent. Dist. Of Cal.*, 729 F.2d 823, 826 (9th Cir. 1985)

16   (finding a right of access to document filed in connection with a motion to reduce a

17   sentence); *United States v. Brooklier*, 685 F.2d 1162, 1170 (9th Cir. 1982) (strong

18   presumption exists in favor of public access to court records although the right is not absolute

19   and can be denied if there are compelling countervailing reasons for keeping records secret).

20          Mr. Higuera's counsel, Stephen White, also filed sealed papers supporting a sentence

21   reduction. He urges the Court to cut the sentence to 17 years. Mr. White's arguments focus

22   exclusively on the value of Mr. Higuera's substantial assistance, rather than on

23   non-assistance factors such as hardships of confinement or risk of safety. He points out that

24   Mr. Higuera has an exceptionally good memory, and that he was able to recall and supply

25   interrogators with very detailed information that other cooperating witnesses could not.

26   According to Mr. White, the information that Mr. Higuera provided helped authorities locate

27   and arrest other wanted drug traffickers, including some considered to be in the top echelon

28   of the illegal drug trade. Mr. White also stresses that Mr. Higuera began cooperating with

1  U.S. law enforcement even before his arrest in 2004 and his extradition to the United States

2  in 2007. He urges a 13-year reduction in Mr. Higuera's sentence.

3  **Legal Standard**

4  A preliminary question is whether under Rule 35(b)(2) Mr. Higuera should have any

5  say in the extent of his sentence reduction. In a related case that now appears on Lexis,

6  *United States v. Francisco Javier Arellano-Felix*, __ F.Supp. __, 2015 U.S. Dist. LEXIS

7  77247 (S.D. Cal. June 15, 2015), the Court analyzed this question. Noting that the Ninth

8  Circuit hasn't directly addressed whether a defendant has the right to be heard before the

9  court rules on a Rule 35(b) motion, the Court identified two rules pertaining to the process

10  that may be relevant.  First, a court has no authority to grant Rule 35 relief unless the

11  government moves for a reduction of sentence, which it has done here. *United States v.*

12  *Tadio*, 663 F.3d 1042, 1052 (9th Cir. 2011). Second, a court is not permitted to treat a Rule

13  35 motion as a plenary or de novo resentencing proceeding, *id.* at 1055, because courts

14  "generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillion v.*

15  *United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). It might be argued

16  that, in combination, these rules authorize a district court to rule summarily on a

17  government's Rule 35(b) motion without seeking or permitting input from the defendant.

18  On the other hand, while Rule 35(b) authorizes the government to recommend a

19  reduction of a defendant's sentence based on his post-sentencing cooperation, the Ninth

20  Circuit has emphasized that a district court must rely on its own evaluation of the significance

21  and usefulness of the defendant's cooperation, taking into consideration the government's

22  recommendation. *United States v. Ressam*, 593 F.3d 1095, 1125 (9th Cir. 2010) *superseded*

23  *by United States v. Ressam*, 679 F.3d 1069 (9th Cir. 2012) (en banc). In other words, the

24  court's role in the Rule 35 process is to decide whether to accept the Government's

25  recommendation and, if so, the magnitude of departure as a function of the degree and

26  nature of the cooperation. *Tadio*, 663 F.3d at 1048. So, assuming a court finds a defendant

27  has rendered substantial assistance, it can order a greater reduction of sentence than that

28  requested by the government. The Court's order in *Arellano-Felix* acknowledged the

1   possibility that the extent of a sentence reduction predicated on a defendant's

2   post-sentencing cooperation could be influenced by input from a defendant or from his

3   counsel, but characterized it as "unlikely." *Arellano-Felix* at *5-6.

4        In *United States v. Gangi*, 45 F.3d 28, 31-32 (2nd Cir. 1995), the Second Circuit held

5   that a defendant has a due process right to respond to a Rule 35(b) motion and to advocate

6   for a greater reduction of sentence, although no formal or evidentiary hearing is required.

7   The *Gangi* court observed that Rule 35 is the post-sentence counterpart to § 5K1.1 of the

8   U.S. Sentencing Guidelines ("Guidelines"), which permits a court to reduce a defendant's

9   sentence for presentence substantial assistance. That observation is relevant here. It is

10  common practice in the Southern District of California for a defendant to be served with the

11  government's § 5K1.1 motion, and to have an opportunity to comment. Moreover, the Ninth

12  Circuit has held that a defendant has the right to challenge the government's refusal to seek

13  a downward departure under § 5K1.1 – including, at least implicitly, the government's

14  decision to ask for a skimpy downward departure – on grounds of either impermissible

15  motive or breach of the plea agreement. *United States v. Treleaven*, 35 F.3d 458, 461 (9th

16  Cir. 1994). Although Mr. Higuera does not allege that the government scaled back its Rule

17  35(b) recommendation based on an impermissible motive, and his plea agreement did not

18  have a provision requiring – or even contemplating – that the government would bring either

19  a § 5K1.1 or a Rule 35(b) motion, the Court nonetheless finds *Gangi* persuasive, and

20  believes that the case provides impetus for considering input from the defendant and his

21  counsel in assessing the extent of a Rule 35 sentence reduction.

22       As a final consideration, the Court is mindful that no review is permitted of its ruling

23  on a Rule 35(b) motion, as long as the decision to reduce or not reduce the defendant's

24  sentence is not "in violation of law." *Tadio*, 663 F.3d at 1045-46; *see also United States v.*

25  *Pedroza*, 355 F.3d 1189, 1190-91 (9th Cir. 2004) (per curiam) (no jurisdiction under 18

26  U.S.C. § 3742 to review defendants claim that district court "abused its discretion by failing

27  to reduce his offense level, and consequently his sentence, to a degree that he believes

28  properly reflects the assistance he provided to the government"); *United States v. Doe*, 351

1   F.3d 929, 932 (9th Cir. 2003) (same); *United States v. Arishi*, 54 F.3d 596, 597-98 (9th Cir.

2   1995) (same). For this additional reason, the Court believes that its assessment of whether

3   the government's sentence reduction recommendation goes far enough will be better served

4   by permitting the defendant to comment and advocate on the issue. The Court will therefore

5   entertain the defendant's input and allow his motion.

**Analysis**

7        The government has recommended a 10-year reduction of Mr. Higuera's original

8   sentence based on his post sentencing substantial assistance. The recommendation was

9   made by an experienced prosecutor who has developed comprehensive knowledge of the

10  AFO. The prosecutor also has the benefit of knowing the latest information available to law

11  enforcement about other active drug cartels and other cartel participants who are currently

12  operating. Five factors are relevant in assessing the government's recommendation: (1) the

13  court's own evaluation of the significance and usefulness of the defendant's assistance

14  (taking into consideration the government's evaluation); (2) the truthfulness, completeness,

15  and reliability of any information provided; (3) the nature and extent of the assistance; (4) any

16  injury or risk to the defendant or his family as a result of his cooperation; and (5) the

17  timeliness of the defendant's assistance. *Arellano-Felix* at *8-9.

18       The Court finds that Mr. Higuera provided significant and useful information to the

19  government, that the information was truthful, complete, and reliable, and that it was timely

20  and helpful. Although there has been no showing that Mr. Higuera has been threatened or

21  injured for assisting the government, the Court will assume that his decision carried with it

22  an increased *risk* of harm. For all of these reasons, the Court concludes that Mr. Higuera

23  provided substantial assistance to the government after he was sentenced. This finding is

24  a required first step before the Court considers the magnitude of any sentence reduction

25  under Rule 35. *Tadio*, 663 F.3d at 1048.

26       The remaining question in this case is whether a greater reduction of Mr. Higuera's

27  sentence than that recommended by the government is warranted for his substantial

28  assistance. In *Arellano-Felix*, the Court chose to defer primarily to the prosecutor's

1   assessment of the value of the assistance. The Court explained that there are practical

2   reasons for this. "Because prosecutors work closely with law enforcement agents who are

3   on the front lines of the drug war, they are able to acquire a great amount of information,

4   insight, and knowledge that helps them evaluate cooperation and assess its value. In

5   contrast, judges – who are not on the front lines – are much more likely to form impressions

6   about the significance and usefulness of cooperation from the accounts they get from others

7   rather than from first-hand experience." *Arellano-Felix* at *11. In contrast to the evaluations

8   offered by prosecutors, the Ninth Circuit has recognized that neither the defendant nor his

9   counsel will ordinarily have comprehensive enough information (or particular competence)

10  to assess the value of the information that a defendant provides. This is because neither the

11  defendant nor defense counsel are in a position to really know how useful information is to

12  law enforcement and prosecutors as they are even further removed from the evaluation

13  process:

14      More broadly, [the defendant] and his counsel [are] in no position to evaluate
        the effects of and benefits from his cooperation. Notably, they [cannot] know
15      what the government already [knows] or would have been able to learn from
        other sources. That is why the Guidelines expressly require district courts to
16      give substantial weight to the evaluation by the government. It is the
        government that is in the position to know the effects of defendants' provided
17      information . . . .

18  *Ressam*, 679 F.3d at 1092-93.

19      Just as in *Arellano-Felix*, it makes sense here for the Court to rely primarily on the

20  prosecutor's assessment of the extent and value of the defendant's cooperation and on his

21  recommendation of what the cooperation is worth. While the Court respects Mr. White's

22  evaluation of Mr. Higuera's assistance – and has specifically considered his observation that

23  the defendant's recollections were particularly detailed and clear – the Court nonetheless

24  finds that the prosecutor is in a superior position to evaluate the value of the information to

25  law enforcement and to estimate the credit to be given for it.

26      Here, the prosecutor has recommended a 10-year reduction based on Mr. Higuera's

27  post-sentence assistance. That amounts to cutting one-third off his original sentence – a

28  generous break for a confessed murderer and trusted member of a dangerous drug cartel

97cr2520

1  responsible for causing lasting harm to our community and to our country generally. But for

2  reasons outlined above, the Court will defer to the prosecutor's judgment and to his estimate

3  of the value of the information Mr. Higuera provided. The defendant's sentence will be

4  reduced from 30 years to 20 years, but no more than that.

5  The government's motion to reduce Mr. Higuera's 30 year sentence to 20 years under

6  Rule 35(b)(2) is **GRANTED**. The defendant's motion for a further reduction of the original

7  sentence is **DENIED**.

8  **IT IS SO ORDERED**.

9

10  DATED:  July 2, 2015

11  *Larry A. Burns*

12  **HONORABLE LARRY ALAN BURNS**
United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28